```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
MICHAEL J. GALGANO,                                               :
                                                                  :
                            Plaintiff,                            :  MEMORANDUM DECISION
                                                                  :  AND ORDER
             - against -                                          :
                                                                  :  18-cv-4409 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                                  :
                                                                  :
                            Defendant.                            :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises five points of error. First, plaintiff contends that the ALJ failed to have a medical consultant evaluate the medical evidence. Second, plaintiff contends that the ALJ failed to give controlling weight to plaintiff's treating physicians. Third, plaintiff contends that the ALJ failed to properly address medical source opinions when assessing plaintiff's residual functional capacity. Fourth, plaintiff contends that the ALJ improperly found that plaintiff can perform light work. Fifth, plaintiff contends that the ALJ erred in formulating his hypothetical to the vocational expert.

For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

Plaintiff first claims that "[n]o State agency medical consultant ever reviewed the medical evidence to determine whether a listing may be 'equaled,' as required by SSR 96-6p."

According to plaintiff, this was error because, under Social Security Ruling 96-6p, when an updated medical judgment as to medical equivalence is required, either the ALJ or the Appeals Council must call on the services of a medical advisor.  Here, plaintiff argues that the ALJ "fail[ed] to provide any rationale for why Listing 1.02 was not met or equaled," or, at the very least, to consult a medical advisor for the same.  I disagree on both counts.

As an initial matter, SSR 17-2P expressly "rescinds and replaces SSR 96-6p."  This new ruling gives the ALJ discretion to "ask for and consider evidence from medical experts."  Because SSR 17-2P went into effect on March 27, 2017, and the ALJ issued his decision on August 17, 2017 (and held the administrative hearing on August 1, 2017), the ALJ did not err as a matter of law by not consulting a medical expert.

Moreover, the ALJ's decision plainly demonstrates sufficient analysis of the factors under Listing 1.02 in rejecting that Listing.  Listing 1.02 for "major dysfunction of a joint(s) (due to any cause)" provides that a relevant finding of disability requires a

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> >
> > or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Because "[a]n impairment that manifests only *some* of [the relevant] criteria . . . does not qualify" under the Listing, the ALJ need only have determined that a single one was lacking to reject the Listing.  See Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (emphasis added).

In this case, the ALJ reasoned that a

> [d]isability cannot be established under sections 1.02 (major dysfunction of a joint) because there are no reports of an inability to ambulate effectively or the inability to perform fine and gross movements effectively. The claimant's gait has been described as non-antalgic and although he has a decreased range of motion in the left upper extremity, he has no significant deficits in motor strength with no deficits in fine manipulation noted.

As "the claimant has the burden [of proof] on the first four steps" of the disability analysis, Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000), the ALJ's determination that plaintiff failed to establish certain criteria under a Listing was sufficient to reject that Listing.

## II.

Plaintiff next contends that the ALJ failed to give controlling weight to his treating physicians' opinions. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating physician's opinion controlling weight, he must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in

3

the area covering the particular medical issues." Burgess, 537 F.3d at 129 (*colatus*[1]). If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite his "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (quoting Halloran, 362 F.3d at 33).

In supporting his case for disability benefits, plaintiff submitted medical opinions from his treating orthopedist, Dr. Eric Price, and his treating pain management specialist, Dr. Arash Yadegar. Dr. Price answered a medical source statement questionnaire, saying that plaintiff sustained a "complex tear of the posterior horn and bony segment of the medial meniscus." He further stated that this injury caused plaintiff severe pain in his right knee, as well as tenderness, mild effusion, difficulty with ambulation, and difficulty bearing weight and standing or walking for prolonged periods of time. Dr. Price characterized plaintiff's pain as "severe and constant in [right] knee, worse with activity," and that as a result he has "difficulty with ambulation."

In addition, Dr. Price concluded that plaintiff can never twist, stoop, crouch, climb ladders, or push/pull with his legs. Although he can climb stairs occasionally, that is only "when necessary as tolerated." Dr. Price further opined that plaintiff is further limited to sitting for, at most, one hour at a time, and can only stand for a maximum of five minutes at a time. Finally, Dr. Price opined that, in an eight-hour work day, plaintiff can (with normal breaks) stand for fewer than two hours and sit down for about two to three hours. At the end of the questionnaire, Dr. Price wrote that plaintiff "is unable to work [in] any capacity."

The ALJ acknowledged the validity of these symptoms but rejected the proposed severity of restrictions, ultimately affording Dr. Price's opinion "limited weight":

---

[1] I.e., edited citation.

> Only limited weight is given to the opinion of Dr. Price that the claimant can perform less than sedentary work. Specifically, Dr. Price concluded that the claimant can sit a maximum of 1 hour at a time and stand a maximum of 5 minutes at a time. Dr. Price further concluded that in an 8-hour day the claimant can stand/walk fewer than 2 hours and sit 2-3 hours; must walk every 60 minutes for 1-2 minutes at a time; can occasionally lift fewer than ten pounds; can never perform postural activities due to right knee pain; and would be absent more than 3 times per month. This is out of proportion to the physical examination findings and the medical records as a whole including Dr. Price's own treatment notes which show no deficits in lifting with the claimant's right dominant arm as well as no motor strength deficits in the left upper extremity. Limited weight is further given to Dr. Price's statements that the claimant has a total temporary impairment and he cannot return to work as well as a permanent partial disability with 60 percent loss of use of the left shoulder. The undersigned finds that these statements are not inconsistent with a conclusion that the claimant can perform work consistent with the residual functional capacity found in this case. Further, no significant weight is given to the extent that Dr. Price stated that the claimant is disabled and unable to work as the ultimate question of disability is reserved to the Commissioner of the Social Security Administration.

In this analysis, the ALJ said three separate things, all of which I agree with: (1) that the medical evidence does not support the limitations Dr. Price's questionnaire claims exist; (2) that even assuming plaintiff has a total temporary impairment and a 60% loss of use of his left shoulder, that does not mean he is disabled; and (3) that Dr. Price's conclusion that plaintiff is disabled is inappropriate.

To the first point, the record provides ample evidence to support the ALJ's conclusion that plaintiff's knee injury does not render him disabled. The February 3, 2016, treatment notes from plaintiff's visit to Dr. Price regarding his knee show that plaintiff reported a dull ache two weeks out from the injury, with an active pain of "9 out of 10" and a resting pain of "4 out of 10." A month later, plaintiff returned to Dr. Price for a checkup. Although plaintiff reported that the pain persisted, Dr. Price concluded that "Quadriceps strength is 5/5[;] Hamstring strength is 5/5[;] Neurological examination of the knee is as follows: light touch is intact throughout."

5

We know that plaintiff's knee was not a problem at that point because roughly a year later, on March 1, 2017, plaintiff returned to Dr. Price for his knee, after re-injuring it *while ice skating*, complaining that "it cracks and it is painful." Even then, the treatment notes from that visit again show 5/5 for quadricep and hamstring strength.

Furthermore, during his hearing testimony, plaintiff "confirmed that he does household activities, walks his dogs, assists his children with leaving for school in the morning, and drives daily." It's also significant that his two post-knee surgery injuries occurred while he was snow-blowing (2016) and while he was ice skating (2017), two physically strenuous activities wholly inconsistent with severe knee pain. In short, there is enough here to conclude that plaintiff's knee condition was non-disabling.

To the second point, it is plainly true that a "60 percent loss of use of the left shoulder" is not necessarily "inconsistent with a conclusion that the claimant can perform work." There are numerous jobs in the national economy that require only slight movement of the shoulder. This is especially the case when the impaired arm is not the worker's dominant arm, which is the situation here.

And to the third point, the ALJ was correct to afford "no significant weight [to Dr. Price's opinion] that the claimant is disabled and unable to work as the ultimate question of disability is reserved to the Commissioner of the Social Security Administration." According to 20 C.F.R. § 404.1527(a), "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments(s), including your *symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions*" (emphasis added). However, § 414.1527(d)(1) makes clear that it is the Social Security Administration ("SSA"), not the treating physician, who may opine on whether a

6

claimant "meet[s] the statutory definition of disability." Indeed, a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the SSA] will determine that [a claimant] is disabled." 20 C.F.R. § 404.1527(d)(1).

As for plaintiff's left shoulder injury, although Dr. Price initially treated plaintiff for his "shoulder impingement syndrome," pain specialist Dr. Yadegar began treating plaintiff's left arm in 2015. According to Dr. Yadegar's July 25, 2017, medical source statement, plaintiff has left shoulder pain consistent with Chronic Pain Syndrome. He further wrote that plaintiff's symptoms include constant, severe pain in left arm (7 out of 10), which is "dull, aching, radiating, and sharp" above the elbow; that he has a limited range of motion due to the pain and his medication leaves him drowsy and dizzy; and that he can never lift more than 10 pounds.

Further, Dr. Yadegar opined that during an eight-hour day, plaintiff can "grasp, turn, twist objects" 0% of the time in both arms; finely manipulate objects with his fingers 33% of the time in his right arm and 20% of the time in his right arm; and reach overhead 33% of the time with his right arm and 5% of the time with his left arm. The questionnaire provides no apparent reason why plaintiff's right arm is so severely restricted (or restricted at all), but plaintiff testified at his hearing that the right-arm pain is due to overuse as compensation for his left arm pain and movement restrictions.

The ALJ actually gave "great weight" to most of Dr. Yadegar's opinion, but found that the record did not support such restrictive limitations on plaintiff's right arm or on fine manipulation with either of plaintiff's hands:

> As for the opinion evidence, great weight is given to the opinion of Dr. Yadegar insofar as the claimant has manipulative limitations with the left non-dominant upper extremity. This is consistent with medical evidence as a whole as well as the type and degree of treatment needed. Less weight is given to the extent that Dr. Yadegar concluded that the claimant can lift fewer than ten pounds only occasionally and can perform no grasping, turning or twisting objects with either

7

arm. This is not supported by Dr. Yadegar's own treatment notes which shows no deficits with respect to the claimant's right dominant arm and which shows 5/5 motor strength with the claimant's non-dominant left arm. Moreover, no significant deficits with fine manipulation with either hand are noted.

The record supports the ALJ's treatment of Dr. Yadegar's opinions, which for the most part give great weight to those opinions. Regarding the claimed limitations of plaintiff's right arm, however, the ALJ noted in his decision that the treatment notes do not support that any limitations exist. Indeed, a review of Dr. Yadegar's treatment notes turns up no evidence that plaintiff had ever even discussed his right arm with the doctor. Nor does plaintiff even reference such a limitation in his briefing.

### III.

Plaintiff's third and fourth points of error are largely congruent to his second point – that the ALJ improperly discounted the treating physician's opinions and arrived at too broad a residual functional capacity ("RFC"). Specifically, the ALJ found that

> [a]fter careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

Ultimately, the ALJ determined that plaintiff had the RFC to perform light work, which 20 C.F.R. 404.1567(b) says may require carrying up to 20 pounds occasionally and 10 pounds frequently. In addition, many light jobs are performed while standing or, if sitting, may require the worker to operate arm or leg controls. Plaintiff claims the ALJ did not properly support this conclusion.

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a). An ALJ will assess a claimant's RFC by considering "all of the relevant medical

8

and other evidence." Id. If the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed. See Richardson v. Perales, 402 U.S. 389, 401-02 (1971). The substantial evidence standard requires that a decision be supported "by more than a mere scintilla" of evidence, or, otherwise stated, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Here, although I can certainly imagine reasonable minds disagreeing about whether plaintiff is fit for light work rather than sedentary work, the evidence sufficiently supports that plaintiff can perform light work (and, in any event, that plaintiff can perform *work*, and is thus not disabled). According to his testimony, on a daily basis plaintiff drives, takes care of his kids (10 and 16) at home, and walks his dog – albeit usually for short distances. Plaintiff also socializes once or twice a week and sometimes loads his dishwasher.

The ALJ also noted that, despite plaintiff's limited range of motion in his left shoulder as recently as June 2017, he is also "described as stable on current pain medication with no reports of numbness, tingling, or weakness." In addition, although various treatment options were open to plaintiff, he decided to stick "with conservative care with pain medication as he was without any notable side effects." And as recently as June 2017, Dr. Yadegar reported that "[t]here is clinically meaningful improvement in pain and function," that plaintiff "denies new numbness, tingling, weakness," and that he should "[c]ontinue home exercises, stretching, activity

9

modification, physical therapy, and conservative care." Dr. Price also repeatedly reported perfect strength in plaintiff's leg muscles and exhibited normal sensation and coordination.

Finally, it is significant that despite plaintiff filing for disability insurance benefits in 2015, he had subsequently performed strenuous physical activities such as dislodging his wife's car from the snow in 2016 and ice skating in 2017. Although the ALJ noted that plaintiff's insured status did not expire until December 31, 2019, such events demonstrate, at least, that plaintiff was likely capable of working through 2017 (rather than May 2013, as he claims). Moreover, there is little to no post-ice-skating injury evidence in the record that corroborates the severe limitations Drs. Price and Yadegar advance in their respective questionnaires.

IV.

Plaintiff's final contention is that the "ALJ posed a hypothetical question to VE Archer that generally conformed to the ALJ's flawed RFC determination and which did not include all of Mr. Galgano's impairments and limitations." In particular, plaintiff assigns as error that the ALJ left out of the hypotheticals (1) that plaintiff's symptoms would cause constant interference with his attention and concentration; (2) the side effects of plaintiff's pain medications, including drowsiness and dizziness; and (3) that plaintiff would be absent more than three times per month.

As plaintiff correctly points out, "if a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocation expert's response cannot constitute substantial evidence to support a conclusion of no disability." Kuleszo v. Barnhart, 232 F.Supp.2d 44, 57 (W.D.N.Y. 2002) (quoting Morse v. Shalala, 16 F.3d 865, 874 (8th Cir. 1991)). However, as evidenced by the discussions under the first three sections of this decision, the ALJ appropriately omitted these because he found that plaintiff did not have these impairments and limitations in the first place.

10

Indeed, plaintiff's physicians' treatment notes commonly reflect that he "is stable on current pain medication with analgesia and without notable side effects or any obvious aberrant behaviors exhibited" and that he is "[a]lert and oriented to time, place and person . . . [with n]o evidence of mood disorder, calm affect." As discussed above, the ALJ properly afforded only "limited weight" to Dr. Price's opinion that plaintiff would be absent more than 3 times per month.

## CONCLUSION

Plaintiff's [19] motion for judgment on the pleadings is denied and the Commissioner's [22] cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
　　　　May 5, 2020